**Kelly Sue LOGAN, et al., Plaintiffs,**

v.

**WEST COAST BENSON HOTEL, et al., Defendants.**

**Civil No. 96–966–JO.**

United States District Court, D. Oregon.

Sept. 9, 1997.

Kenneth Perry, Portland, OR, for plaintiffs.

Lisa F. Rackner, Lindsay, Hart, Neil & Weigler, Portland, OR, Karen F. Jones, Caitlin J. Moughon, Michael C. Sullivan, Graham & James LLP/Riddell Williams, Seattle, WA, Susan K. Eggum, Portland, OR, for defendants.

### BACKGROUND AND OVERVIEW

ROBERT E. JONES, District Judge.

In this action, three plaintiffs, Kelly Logan, Kelli Matthews and Michelle Favreau, have brought claims against defendants Westcoast Benson Hotel and Dennis Kirshner for sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, 42 U.S.C. §§ 1985 and 1986, and other related state law claims. Plaintiffs' causes of action arise from their employment at defen-

dant Westcoast Benson Hotel's (Benson Hotel) restaurant -Trader Vic's. Defendant Dennis Kirshner (Kirshner) was the manager of Trader Vic's from October 1993 until March 1995.

Specifically, plaintiffs have alleged the following sixteen claims: (1) Title VII, 42 U.S.C. §§ .2000e et seq.; (2) 42 U.S.C. § 1981; (3) 42 U.S.C. §§ 1985 and 1986; (4) negligent hiring and/or retention; (5) negligent supervision; (6) intentional interference with a business relationship/prospective advantage; (7) intentional infliction of emotional distress; (8) reckless infliction of emotional distress; (9) negligence; (10) gross negligence; (11) aiding and abetting discrimination; (12) assault; (13) battery; (14) slander per se; (15) invasion of privacy—disclosure of private facts; and (16) invasion of privacy—false light publicity.

This case is before this court on four motions: 1) plaintiffs' motion (# 61) to remedy deposition discovery abuses and for sanctions; 2) defendants' motions for summary judgment (Kirshner # 51 & Benson Hotel # 56); 3) plaintiffs' counter-motion for partial summary judgment (# 73); and 4) defendant Benson Hotel's motion to strike (# 86) portions of plaintiffs' statement of facts. For the reasons discussed below, I DENY plaintiffs' discovery motion (# 61); GRANT defendant Kirshner's motion (# 51) for summary judgment in part and DENY it in part; GRANT defendant Benson Hotel's motion (# 56) for summary judgment in part and DENY it in part; and DENY defendant Benson Hotel's motion (# 86) to strike.

### I. MOTION FOR ORDER TO REMEDY DEPOSITION DISCOVERY ABUSES & FOR SANCTIONS

Plaintiffs have moved (# 61), pursuant to FRCP 30(d)(2) and 37(c), to remedy deposition discovery abuses that arose during the course of defendant Dennis Kirshner's deposition. Plaintiffs' counsel Kenneth Perry alleges that counsel for defendant Kirshner, Susan K. Eggum, was "impermissibly coaching Mr. Kirshner during his original deposition among other things." He asks the court to order Kirshner to submit to a new

deposition and to pay plaintiffs' costs of $695.00 incurred for the original deposition.

Defendant's counsel disputes these allegations, stating that plaintiffs' counsel "has made highly serious accusations against ... [her] for 'hiding information' and for discovery 'abuses.'" Defendant's counsel also turns the court's attention to Mr. Perry's letter, dated March 6, 1997, in which he wrote:

[U]pon receipt and review of the transcript from Mr. Kirshner's deposition, I intend to move the court for sanctions. Specifically, I will seek an order from the court compelling you and/or your client to pay all costs associated with Mr. Kirshner's deposition. I may further move that your client be deposed again (based upon intentionally disruptive conduct that I believe is sufficiently recorded). However, if you and/or your client wish to voluntarily pay the costs associated with Mr. Kirshner's deposition I will not seek any further sanction from the court.

"The district court has great latitude in imposing sanctions for discovery abuse." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir.1996). "The imposition of discovery sanctions ... [is] reviewed for an abuse of discretion." *Hilao v. Est. of Marcos*, 103 F.3d 762, 764 (9th Cir.1996). The Ninth Circuit has allowed sanctions for various forms of discovery abuse. *See Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. Partnership*, 76 F.3d 1003, 1008 (9th Cir.1996) (holding that the district court did not abuse its discretion in sanctioning defendants for not producing a purchase agreement that was already a public document); *Telluride Management Solutions, Inc. v. Telluride Investment Group*, 55 F.3d 463, 466 (9th Cir.1995) (holding that an award of discovery sanctions for failure to appear at deposition was not an abuse of discretion).

"Courts of justice are universally acknowledged to be vested, by their very

creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (citations omitted). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)). A federal court has the power to discipline attorneys who appear before it; however, this power "ought to be exercised with great caution." *Id.*

Although this court condemns both counsels' behavior during the discovery process and indeed their constant bickering over every aspect of this litigation, I do not believe this conduct to be so abusive as to warrant sanctions. Moreover, since both sides have committed abuses, sanctions benefitting only one side would be inappropriate. Therefore, plaintiffs' motion for discovery abuses and sanctions is DENIED.

## II. *MOTIONS FOR SUMMARY JUDGMENT FACTS*

Plaintiffs' causes of action arise from their employment at defendant Westcoast Benson Hotel's (Benson Hotel) restaurant—Trader Vic's. Defendant Dennis Kirshner (Kirshner) was the manager of Trader Vic's from October 1993 until March 20, 1995. As manager of Trader Vic's, Kirshner was in charge of the restaurant and supervised its day-to-day operations.

The Benson Hotel owned and operated Trader Vic's restaurant until the restaurant was closed on April 19, 1996. Every employee of the Benson Hotel is given an Employee Handbook, which includes a sexual harassment policy. All three plaintiffs and defendant Kirshner apparently received this Employee Handbook.[1] The policy prohibits

---

1. Defendant Benson Hotel moved to strike plaintiffs' statement of fact regarding plaintiffs having not received and not read the Employee Handbook because submitted evidence and plaintiffs' deposition testimony contradict these statements. However, my opinion did not predominantly rely on these statements or, for that matter, any of the

contested portions of plaintiffs' statement of fact. Thus, defendant Benson Hotel's motion to strike (# 86) numerous portions of plaintiffs' statement of facts is DENIED. Furthermore, the court leaves room for defendant to make, where appropriate, future evidentiary objections during pretrial procedures and the trial.

sexual harassment at the Benson, describes what "sexual harassment" can be, and directs any employee who believes that he or she has been the subject of harassment to immediately report it to the General Manager. Furthermore, the policy also assures employees that the Benson Hotel will handle all harassment complaints promptly and effectively.

Kelly Logan (Logan) worked at Trader Vic's from November 1993 until June 15, 1994. Kelli Matthews (Matthews) worked at another of the Benson Hotel's restaurants, the London Grill, beginning in September 1993. She worked additional shifts at Trader Vic's from December 1993 until July 9, 1994.[2] Michelle Favreau (Favreau) worked at Trader Vic's from June 1994 until the restaurant shut down on April 19, 1996. All three plaintiffs worked as hostesses/cashiers under Kirshner's management at some period during their employment.

Each of the three plaintiffs states in her signed declaration that:

Throughout the time that I worked for defendant Kirshner at Trader Vic's, defendant Kirshner subjected me to repeated physical contact. The physical contact caused by defendant Kirshner was always uninvited and unwanted. Furthermore, the contact was personally offensive to me.

More specifically, Logan recalls in her declaration a specific incident when she stretched her arms toward the ceiling to make a point and Kirshner, while staring directly at her breasts, asked her to "do that again." Matthews recalls in her declaration that Kirshner made repeated requests for her to become his mistress and repeatedly made statements that "her boyfriend was too young and immature, and that [Matthews] needed an older man like him to satisfy [her] sexually." Favreau recalls in her declaration that Kirshner grabbed her breasts during the Christmas season 1994 and he then said, "Don't file sexual harassment on me, okay." Further-

more, she recalls that he also pointed to a holiday ornament on a tree that was somewhat phallic, and said "mine is bigger than that."

The three plaintiffs all recall in their declarations repeated instances where Kirshner would pass behind them at the hostess counter and "his hands would touch [their] waist[s] and his groin would be pressed against [their] buttocks." Each time this occurred, plaintiffs state, Kirshner never simply announced that he needed to get into the hostess area and asked or waited for them to step outside of it. Logan and Matthews both declare that Kirshner would often say, "I hope you're not going to get me for sexual harassment" after passing behind them in the hostess area. Favreau declares that Kirshner would often look at her and smile after passing behind her in the hostess area. In addition, all three plaintiffs recall instances where Kirshner made numerous remarks regarding their breasts, legs, and their "nice shape" in general.

Kirshner, in his deposition, denied ever making any sexually explicit comments to plaintiffs or ever having any contact with the plaintiffs in the sexually harassing manner that they allege. He did recall an incident where he accidentally bumped into Matthews and may have touched her breasts. Also, he stated that he may have touched the plaintiffs' waists once or twice while passing by them behind the hostess area. However, when asked again if he had ever touched the plaintiffs in the manners alleged, he again answered that he had not.

Logan and Matthews ended their employment at Trader Vic's on or about June 15, 1994 and July 9, 1994, respectively. They had to complete an exit interview form on or about their last day of work. Kirshner was present while both plaintiffs filled out this form. Logan noted on her exit interview

---

**2.** This date was in dispute at oral argument, with plaintiffs' counsel contending that Matthews' final date of employment was July 10, 1994. However, defendant Benson Hotel submitted evidence to show that Matthews' last day of paid work was on July 8, 1994 and that her exit interview was on July 9, 1994. Moreover, Matthews testified in her deposition that these dates were correct.

July 10, 1994 was Matthews' official last day of the pay period. However, there is no evidence to indicate that Matthews was at the Benson Hotel on this date and thereby subjected to any of the alleged harassing behavior. In addition, defendant Benson Hotel submitted unopposed evidence that demonstrates that Kirshner took the day off on July 10, 1994.

form that "the thing she liked least about her employment at the Benson was a lot of sexual comments and joking." Matthews also reported problems regarding Kirshner's behavior to the London Grill manager, Lisa Freauff. Matthews stated in her declaration that the reason she quit her job was that she needed more work hours "to make ends meet," that the London Grill Restaurant did not have any more hours to give her, and that she had resolved to avoid Kirshner at all costs. However, Matthews did not indicate any of these reasons on her exit interview form.

In March 1995, Favreau went to Robert Parsons [3] (Parsons), the Benson Hotel's general manager, with allegations of sexual harassment against Kirshner. Upon completion of his investigation, eight days after Favreau's allegations, Parsons decided to terminate Kirshner on March 20, 1995.

However, Parsons, in his deposition, stated that he did not find that Kirshner had engaged in any individual act of sexual harassment. Parsons further testified that Kirshner was not fired or sanctioned solely for engaging in sexual harassment.[4] Nevertheless, Parsons did testify that the reason for Kirshner's termination was that:

> [I]n looking at the complaints together, not each individual one, ... there was a feeling ... [of] a strong discord amongst the staff, that there was ... the appearance and the

concern of too much drinking, that [the] drinking interfered with his ability to work and that there was a number of staff members that were made to feel uncomfortable because of the sexual conduct that had taken place.

## ADMINISTRATIVE AND COURT HISTORY

On or about March 15, 1995 and May 1, 1995, respectively, Logan and Matthews filed charges of sexual harassment/discrimination with the Equal Employment Opportunity Commission (EEOC),[5] satisfying the requirements of 42 U.S.C. § 2000e–5(b) and (e). An EEOC investigator reported in an Amended Determination letter to Kelli Matthews, dated October 27, 1995, that:

> I have considered all the evidence disclosed during the investigation and find that there is reasonable cause to believe that Charging Party and several other female employees, including Michelle Favreau, were subjected to sexual harassment. The Commission has determined that there is a violation of the Civil Rights Act of 1964.

Favreau filed a complaint with the EEOC on December 4, 1995. On or about June 24, 1996, however, she withdrew her complaint.

The EEOC attempted to eliminate the alleged unlawful practices by an informal

---

3. Plaintiffs also claim that Parsons knew or should have known of Kirshner's sexual harassment because: 1) Parsons was the General Manager of the Benson Hotel and oversaw Kirshner's position; and 2) Parsons was Kirshner's drinking pal and they frequently drank together at Trader Vic's.

There are also allegations that Parsons engaged in behavior construed as sexually demeaning to women. Within two months of conducting an investigation into the allegations of sexual harassment of Kirshner, Parsons allegedly commented to a Benson Hotel doorman that "he would only hire a female ... door person if she would work topless," and "allowed a scantily clad belly dancer to dance around him ... in the main lobby of the Benson ... [and] in full view of female and male employees as well as patrons."

Parsons, however, has not been named as a defendant in this action.

4. Defendant Benson Hotel moved to strike those portions of plaintiffs' statement of facts asserting that "defendant Kirshner was not fired or sanc-

tioned for engaging in sexual harassment." I did not, however, predominantly rely on plaintiffs' statements concerning this matter. Therefore, defendant Benson Hotel's motion to strike is DENIED.

See also supra note 1 regarding defendant Benson Hotel's motion to strike.

5. Logan filed her charge of sexual harassment with Oregon's Bureau of Labor and Industries (BOLI) on March 15, 1995. Matthews filed her charge with BOLI on May 1, 1995.

BOLI then dually filed the complaint with the EEOC and relinquished jurisdiction to the EEOC under a work sharing agreement because Logan's and Matthews' cases were filed more than 240 days after the alleged offense(s).

Because they filed complaints through the state agency, plaintiffs had 300 days from the date of the alleged offenses to file with the EEOC pursuant to 42 U.S.C. § 2000e–5(e)(1).

method of conciliation with the Benson Hotel, as Title VII requires. However, in a letter dated February 29, 1996, the EEOC district director reported that "[the] EEOC has determined that efforts to conciliate this charge . . . have been unsuccessful."

Plaintiffs then filed their original complaint in this court on July 10, 1996. Logan and Matthews received their "Right to Sue" letters from the EEOC on October 4, 1996. The EEOC also stated that it would continue to investigate the charges.

The EEOC filed its own suit[6] related to the plaintiffs' allegations, which was consolidated with plaintiffs' case on January 13, 1997. On May 27, 1997, this court approved a settlement by consent decree and thereby dismissed the EEOC's case with prejudice.

### DISCUSSION

**I. *Legal Standard for Summary Judgment***

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *United Steelworkers of Amer. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *Id.* at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

Defendants' main argument for summary judgment is that the applicable statute of limitations bars all of plaintiffs' claims. In the alternative, defendants refute or deny the plaintiffs' claims as unsupported and move for summary judgment on all counts. I will address each claim separately, and I will address each plaintiff and defendant separately when factual distinctions make such treatment necessary.

### II. *Federal Discrimination Claims*

Plaintiffs' amended complaint contains numerous claims regarding the events surrounding the alleged sexual harassment that occurred to the three plaintiffs who worked at Trader Vic's Restaurant. Defendants have moved for summary judgment on all of plaintiffs' claims. Plaintiffs have countermoved for partial summary judgment on their Title VII claims.

**A. *Title VII of the Civil Rights Act of 1964 and 1991***

Plaintiffs bring sexual discrimination claims under both Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and O.R.S. Chapter 659. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1).

**1. *Appropriate Parties***

■ Defendant Kirshner has moved for summary judgment on the ground that he cannot be individually liable under Title VII. The Ninth Circuit follows the rule that in regards to "the issue of individual liability under Title VII, . . . liability runs to qualifying employers' only and not to individuals." *Sniadoski v. Unimart of Portland*, 1993 WL 797438, at *1 (D.Or.1993) (citing *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir.1993), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994)). *See also Padway v. Palches*, 665 F.2d 965, 968 (9th Cir.1982) ("[I]ndividual defendants cannot be held liable for back pay."). "This circuit . . . protect[s] supervising employees from liability in their individual capacities." *Miller*, 991

6. See Case No. CV 96–968–JO.

F.2d at 587. "There is no reason to stretch the liability of individual employees beyond the respondeat superior principle intended by Congress." *Id.* at 588.

In *Padway,* a school superintendent with the authority to make recommendations regarding hiring and firing was held not to be individually liable for back pay under Title VII. *Padway,* 665 F.2d at 967–68. This case, however, was decided before the 1991 amendments to Title VII. Prior to 1991, plaintiffs could seek only equitable and injunctive relief under Title VII.

The 1991 amendments expanded the relief available by allowing plaintiffs to seek compensatory and punitive damages. Regardless of this change, the Ninth Circuit in *Miller* once again held that a CEO and two general managers of a restaurant were not individually liable under Title VII.[7] *Miller,* 991 F.2d at 587. Therefore, this court is bound by this precedent.[8]

Defendant Kirshner was an employee of the Benson Hotel and was supervising manager at Trader Vic's when plaintiffs' claims allegedly arose. Therefore, under this circuit's legal precedent, Kirshner is a protected supervising employee. Consequently, he is entitled to summary judgment on this issue.

### 2. *Statute of Limitations*

■ Defendant Benson Hotel moves for summary judgment on the ground that plaintiffs Logan and Matthews did not meet the time period filing requirements of Title VII. "Timely filing of an EEOC complaint is a prerequisite to a Title VII suit." *EEOC v. Wilson Metal Casket Co.,* 24 F.3d 836, 839 (6th Cir.1994). The statute of limitations for filing a claim with the EEOC is set forth in Title VII:

> A charge under [section 2000e–5] shall be filed within one hundred and eighty [(180)] days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person

aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings ... such charge shall be filed by or on behalf of the person aggrieved within three hundred [(300)] days after the alleged unlawful employment practice occurred.

42 U.S.C. § 2000e–5(e)(1).

Logan filed her complaint with the EEOC on March 15, 1995. Her last day at Trader Vic's was June 15, 1994. Thus, Logan filed with the EEOC within 275 days from her last day of work at Trader Vic's. Matthews filed her complaint with the EEOC on May 1, 1995. Her last day at Trader Vic's was July 9, 1994. Thus, Matthews filed with the EEOC within 298 days from her last day at Trader Vic's. Therefore, plaintiffs filed their complaints within the time period Title VII allows if they experienced sexual harassment close to the end of their employment.

■ Plaintiffs meet the EEOC statute of limitations only if they either experienced the alleged sexually harassing conduct within the time allowed by the filing of their complaints with the EEOC, or prove that the conduct was part of a continuing violation of harassment. Under the continuing violation theory, there are two methods available to prove a continuing violation: 1) a continuing policy and practice of discrimination on a company-wide basis; or 2) demonstrating a series of related acts against a single individual. *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1480 (9th Cir. 1989). Plaintiffs must also establish that the continuing violation has occurred within the statutory time period. Thus, "[a] plaintiff who shows that a policy and practice operated at least in part within the limitation period, [or a plaintiff who] show[s] a series of related acts, one or more of which falls within the limitations period," falls within the limitations period. *Id.*

---

7. The court, however, did not specifically address whether these individuals had the authority to hire and fire, although reasonable deduction from their titles would seem to indicate this authoritative capability.

8. *See Hardwick v. Curtis Trailers Inc.,* 896 F.Supp. 1037, 1038–39 (D.Or.1995) (relying on *Miller* in holding that there is no individual liability under the Americans With Disabilities Act (ADA). The ADA's definition on "employer" was held to mirror the definition of "employer" under Title VII).

Logan and Matthews declare that defendant Kirshner subjected them to repeated physical contact and comments of a sexual nature. Furthermore, plaintiffs declare that the Benson Hotel "did not have any posted notices, meetings, training or anything describing its policy against sexual harassment." In contrast, defendant Kirshner denies ever having behaved in the sexually harassing manner that plaintiffs have alleged. Defendant Benson Hotel also testified that every new employee, including plaintiffs and defendant Kirshner, receives an Employee Handbook, which contains its sexual harassment policy. Furthermore, the Benson Hotel declares that each of the three plaintiffs signed a form stating they had completely read or would completely read the handbook.

Therefore, there is conflicting testimony regarding if and when the alleged sexual harassment took place. As such, defendant Benson Hotel is not entitled to summary judgment on this issue because material issues of fact remain.

### 3. *Favreau's Failure to File a Charge with the EEOC*

■■■ Defendant Benson Hotel argues that it is entitled to summary judgment against plaintiff Favreau's Title VII claim because she failed to file with the EEOC and is therefore barred from this suit. "Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (citations omitted). "The provisions granting district courts jurisdiction under Title VII, 42 U.S.C. § 2000e–5(e) and (f), does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC. It contains no reference to the timely-filing requirement." *Id.* at 393–94, 102 S.Ct. at 1132–33 (referring to 42 U.S.C. § 2000e–5(f)(3)). "The provision specifying the time for filing charges with the EEOC appears as an entirely separate provision,

and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 394, 102 S.Ct. at 1132–33 (referring to 42 U.S.C. § 2000e–5(e)).

The Ninth Circuit recognized *Zipes* as valid legal precedent in *Ross v. U.S. Postal Service*, 696 F.2d 720, 722 (9th Cir.1983) ("The requirement that a complainant file a timely administrative charge is not a jurisdictional prerequisite to suit."). In addition, the Ninth Circuit held that if a "time period is a statute of limitations, noncompliance may be excused by the equitable tolling' doctrine; [but,] if … the time period is a jurisdictional prerequisite, [the] equitable doctrine does not apply and noncompliance will divest the court of jurisdiction to hear the case." *Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322, 1324 (9th Cir.1987) (citing *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172 (9th Cir. 1986), *amended by* 815 F.2d 570 (9th Cir. 1987); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392, 398, 102 S.Ct. 1127, 1131–32, 1135, 71 L.Ed.2d 234 (1982)).

■■■ However, the Ninth Circuit has yet to join other circuits in extending this rationale to Title VII multiple plaintiff actions. Thus, I am adopting, in accordance with established Ninth Circuit legal precedent, the "single filing rule" exception to the requirements for a Title VII suit. See *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 840 (6th Cir.1994); *Snell v. Suffolk County*, 782 F.2d 1094, 1100 (2d Cir.1986); *Wheeler v. American Home Products Co.*, 582 F.2d 891, 897 (5th Cir.1977); *Ezell v. Mobile Housing Bd.*, 709 F.2d 1376, 1381 (11th Cir.1983); *Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C.Cir.1981).[9]

■■■ The "single filing rule" provides that "[w]here a substantially related non-filed claim arises out of the same time frame as a timely filed claim, the complainant need not satisfy Title VII's filing requirement to recover." *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 840 (6th Cir.1994). "The purpose of the Title VII filing requirement is

---

**9.** The Third Circuit did not adopt the "single filing rule" exception. *Whalen v. W.R. Grace &* *Co.*, 56 F.3d 504 (3d Cir.1995).

to give notice of potential Title VII liability to an alleged wrongdoer and to allow the EEOC to attempt to conciliate with the wrongdoer rather than go to court." *Id.* at 839 (citing *Foster v. Gueory,* 655 F.2d 1319, 1323 (D.C.Cir.1981)). The "single filing rule" exception still allows Title VII's purpose to be met, because prior complainants who file with the EEOC notify the "alleged wrongdoer" of the conduct and the time frame at issue and the EEOC may still "attempt to conciliate with the wrongdoer rather than go to court." Thus, the "single filing rule" exception to Title VII's filing requirement maintains the integrity and purpose of Title VII.

Kirshner worked as the manager of Trader Vic's from October 1993 until March 20, 1995. All three plaintiffs worked under Kirshner between November 1993 and March 1995, during which the alleged sexual harassment of the three plaintiffs occurred. Therefore, "Favreau's alleged sexual harassment arose during the same time frame" as Logan's and Matthews' "substantially related" and timely filed claims.

As such, Favreau's action falls under the "single filing rule" exception to the filing requirement of Title VII. Furthermore, Title VII's purpose has been met since plaintiffs Logan's and Matthews' claims notified both defendants, Kirshner and the Benson Hotel, of the alleged wrongdoing and the EEOC was able to attempt to conciliate with the wrongdoers before having to file an action with this court. Therefore, Favreau may properly be a plaintiff in this proceeding and defendant Benson Hotel is not entitled to summary judgment on this issue.

### 4. *Prima Facie Case and Material Issues of Fact*

■ Defendant Benson Hotel argues that plaintiffs have failed to state a prima facie case of sexual discrimination, or, alternatively, that defendants have successfully rebutted that case and so are entitled to summary judgment. In addition, plaintiffs have counter-moved for summary judgment, claiming that they have proved their Title VII claims beyond a reasonable doubt.

Under Title VII, the plaintiff has the initial burden of making out a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101

S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). "[I]f the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). However, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. at 804, 93 S.Ct. at 1825). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (citing *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25 n. 2, 99 S.Ct. 295, 295–96 n. 2, 58 L.Ed.2d 216 (1978)).

■ Despite this burden shifting, summary judgment against a plaintiff who makes out a prima facie case of discrimination is rare. A plaintiff cannot rest on her prima facie case if defendants rebut the presumption of discrimination, *Lindahl v. Air France,* 930 F.2d 1434, 1437 (9th Cir.1991), but plaintiff need not produce much more evidence to defeat summary judgment for defendant. As the Ninth Circuit has stated:

The evidence [to establish a prima facie case of discrimination] may be either direct or circumstantial, and the amount that must be produced in order to create a *prima facie* case is "very little." * * * Normally, when such evidence has been introduced, a court should not grant summary judgment to the defendant on any ground relating to the merits. * * * Even if the defendant articulates a legitimate, nondiscriminatory reason for the challenged employment decision, thus shifting the burden to the plaintiff to prove that the articulated reason is pretextual, summary judgment is normally inappropriate.

*Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1110–11 (9th Cir.1991) (citations omitted). So long as plaintiff's evidence "consists of more than the

*McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason." *Id.* at 1111. Moreover, "[w]hen a plaintiff does not rely exclusively on the presumption but seeks to establish a prima facie case through the submission of actual evidence, very little such evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a factfinder." *Schnidrig v. Columbia Machine. Inc.,* 80 F.3d 1406, 1409 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996). By contrast, if the plaintiff fails to meet his or her ultimate burden at the summary judgment stage, summary judgment *in the plaintiff's favor* is inappropriate. *See Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 182, 109 S.Ct. 2854, 2869, 106 L.Ed.2d 134 (1989) (reversing grant of summary judgment to plaintiff who failed to prove that the reduction in her benefits was the result of an intent to discriminate).

This case involves the type of sexual discrimination known as hostile environment.[10] A plaintiff may establish a violation of Title VII by proving that discrimination based on "sex created a hostile or abusive work environment." *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). For such "sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* (quoting *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), and *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir.1982)).

■ In the Ninth Circuit's interpretation of such claims, to prove that a hostile environment existed, a plaintiff "must show that: 1) she was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) the conduct was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Fuller v. City of Oakland, Calif.,* 47 F.3d 1522, 1527

(9th Cir.1995). In addition, "[t]he working environment must both subjectively and objectively be perceived as abusive." *Id.* (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)). Whether a workplace is objectively hostile is determined on a reasonable person standard under the totality of the circumstances. *Id.* As such, hostile environment claims depend immensely upon the resolution of issues of fact.

All three plaintiffs allege that Kirshner subjected them to both verbal and physical conduct of a sexual nature. Kirshner's alleged comments included remarks regarding plaintiffs' breasts, buttocks, legs, and other parts of their anatomy, and his alleged conduct frequently included cornering each of the plaintiffs behind a reception counter and pressing his pelvic area against each woman's buttocks. Plaintiffs state that Kirshner's conduct was uninvited and unwelcome. Furthermore, plaintiffs allege that Kirshner's conduct was sufficiently severe or pervasive enough to be the cause of plaintiffs Logan's and Matthews' quitting their jobs and plaintiff Favreau's motivation to file a complaint with the Benson Hotel. Therefore, plaintiffs adequately state a prima facie case of a hostile working environment in violation of Title VII.

■ The Benson Hotel does not deny that Kirshner ever behaved in the sexually harassing manner that plaintiffs claim. In fact, Parsons, the general manager of the Benson Hotel, stated in his deposition that one of the reasons for Kirshner's termination was that a number of staff members were made to feel uncomfortable because of the sexual conduct that had taken place.

Instead, the Benson Hotel argues that it is not liable under this Title VII action because it neither knew nor should have known about Kirshner's sexual harassment of plaintiffs. The Benson Hotel further claims that when Favreau filed her complaint with Parsons regarding Kirshner's sexual harassment, it took adequate remedial action to end the harassment.

---

**10.** There are two types of sexual discrimination: disparate treatment and hostile environment. Disparate treatment is not an issue in this case.

"Employers are liable for failing to remedy or prevent a hostile or offensive environment of which management-level employees knew, or in the exercise of reasonable care should have known." *E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504, 1515–16 (9th Cir.1989). "An employer's remedial obligations are defined by *Ellison v. Brady.*" *Fuller v. City of Oakland,* 47 F.3d 1522, 1528 (9th Cir.1995); *see Ellison v. Brady,* 924 F.2d 872, 881–82 (9th Cir.1991). "Remedies should be reasonably calculated to end the harassment." *Fuller,* 47 F.3d at 1528 (citations omitted). "*Ellison* lays out a two-part test that goes beyond short-term results ... the reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment [and] to persuade potential harassers from unlawful conduct." *Id.*

The parties, however, have submitted evidence sufficient to create a material issue of fact on this issue. Plaintiffs allege in their declarations that the sexual harassment was overt and occurred on a daily basis. Moreover, they declare that Parsons, the general manager of the Benson Hotel, made frequent visits to Trader Vic's and was Kirshner's drinking pal. In contrast, the Benson Hotel claims that it did not know of Kirshner's behavior until Favreau reported it in March 1995 and that Kirshner was then investigated and, as a result, terminated. Therefore, neither plaintiffs nor defendant Benson Hotel is entitled to summary judgment on this issue.

### B. Discrimination under 42 U.S.C. § 1981

Defendants have moved for summary judgment on the grounds that claims under 42 U.S.C. § 1981 cannot include claims for discrimination by sexual harassment. "[T]he Supreme Court has limited section 1981 to claims of racial discrimination." *Stones v. Los Angeles Community College Dist.,* 796 F.2d 270, 272 (9th Cir.1986) (citing *Runyon v. McCrary,* 427 U.S. 160, 168–72, 96 S.Ct. 2586, 2593–95, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975)). Plaintiffs concede that their section 1981 claims find little or no support within the Ninth Circuit. Moreover, "[d]istrict courts are ... bound by the law of their own Circuit." *Hasbrouck v. Texaco, Inc.,* 663 F.2d 930, 933 (9th Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). Therefore, defendants are entitled to summary judgment on this issue.

### C. Discrimination by Conspiracy under 42 U.S.C. §§ 1985 and 1986

#### 1. Statute of Limitations—Logan and Matthews

Defendants have moved for summary judgment on the grounds that the statute of limitations bars plaintiffs Logan's and Matthews' claims under 42 U.S.C. §§ 1985 and 1986. "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985) (citations omitted).

The Ninth Circuit has analogized section 1985 to section 1983, stating that:

An action under [section] 1985(3) alleging a conspiracy to deprive a person of constitutional rights is designed to remedy the same types of harms as the deprivation actionable under [42 U.S.C.] § 1983. Accordingly, we hold that suits under [section] 1985(3) are also best characterized as personal injury actions and are governed by the same statute of limitations as [section] 1983.

*McDougal v. County of Imperial,* 942 F.2d 668, 673–74 (9th Cir.1991). The statute of limitations for section 1983 claims is "the most appropriate" or "the most analogous" state statute of limitations. *Id.* at 268, 105 S.Ct. at 1942 (citations omitted). "[Section] 1983 claims are best characterized as personal injury actions" and the statutes of limitation "governing actions 'for an injury to the person or reputation of any person'" should apply. *Id.* at 280, 105 S.Ct. at 1949 (citations omitted).

Therefore, the statute of limitations for plaintiffs' claims under section 1985 is the Oregon law that "govern[s] actions for an injury to the person or reputation of any

person." In Oregon, "[a]n action ... for any injury to the person or rights of another, not arising on contract ... shall be commenced within two years." O.R.S. § 12.110(1). Consequently, section 1985(3) borrows Oregon's two-year statute of limitations for personal injuries.[11] Logan and Matthews filed their original complaints in this case on July 10, 1996. Logan's last day at Trader Vic's was June 15, 1994 and Matthews' was July 9, 1994. Therefore, their filing date is past the two-year time period allowed by the statute of limitations under O.R.S. § 12.110(1). As such, defendants are entitled to summary judgment on this issue regarding plaintiffs Logan and Matthews.[12]

### 2. *Plaintiff Favreau*

 Defendants move for summary judgment on the grounds that plaintiff Favreau's §§ 1985 and 1986 claims have not established a prima facie case. "Section 1985(3) provides a private civil remedy for persons injured by conspiracies to deprive them of their right to equal protection of the laws." *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 718 (9th Cir.1981), *cert. denied*, 454 U.S. 967, 102 S.Ct. 510, 70 L.Ed.2d 383 (1981). "[C]overage of [section] 1985(3) reache[s] individuals acting in a purely private capacity." *Id.* at 719. In addition, the Ninth Circuit has stated "that gender-based classifications may result in invidious discrimination." *Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499, 505 n. 16 (9th Cir.1979) (citations omitted).

 *However*, "[a] claim under [section 1985] must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir.1988) (citations omitted). Legal conclusions with no specification of any facts to support the claim of conspiracy is not adequate. *Id.*

 Furthermore, "deprivation of a right created by Title VII cannot be the basis for a cause of action under [section] 1985(3)." *Great American Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979). "If Title VII claims could be asserted under [s]ection 1985(3), plaintiffs could easily avoid Title VII's comprehensive system of administrative process and remedies for employment discrimination claims." *Welsh v. City and County of San Francisco*, 1995 WL 415127 at *1 (N.D.Cal.1995) (referencing *Novotny*, 442 U.S. at 375–76, 99 S.Ct. at 2350–51). "[A section] 1985(3) remedy would not be coextensive with Title VII, since a plaintiff in a an action under [section] 1985(3) must prove both a conspiracy and a group animus that Title VII does not require." *Novotny*, 442 U.S. at 378, 99 S.Ct. at 2352.

Plaintiff Favreau must establish a prima facie case to come within section 1985(3):

> [A] complaint must allege that defendants did (1) 'conspire or go ... on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of person of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or cause to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.

*Id.* (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971)). Furthermore, "[t]he Court ... defined the second element ... to require 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.*

---

11. The Ninth Circuit agreed with this conclusion in an unpublished opinion. *See Yee v. Multnomah County*, 1994 WL 161954, at *1 (9th Cir. 1994).

 However, Ninth Circuit Rule 36–3 provides that an unpublished opinion is not precedential and should not be cited except when relevant under the doctrines of law of the case.

12. "A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir.1988) (citing *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir.1985)). consequently, defendants are also entitled to summary judgment on plaintiffs' section 1986 claims.

(citing *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798).

Plaintiff Favreau's section 1985(3) claim relies primarily on the same facts as her Title VII claim. The remaining allegations that the policies and practices of the Benson Hotel denied the plaintiffs and other women equal privileges and immunities as well as equal protection under the U.S. Constitution are vague and conclusory. Therefore, Favreau has not provided evidence to prove "both a conspiracy and a group animus" beyond the facts alleged in her Title VII claim. Consequently, defendants are entitled to summary judgment on this issue.

## III. Oregon State Law Claims

### A. Aiding and abetting Discrimination under O.R.S. 659.030(1)(g)

██ Like Title VII, Oregon statutes prohibit employers from discriminating on the basis of "race, religion, color, sex, national origin, marital status or age * * * ." O.R.S. 659.030. The standard for establishing a prima facie case under Oregon law is identical to that used in federal law. *Henderson v. Jantzen, Inc.*, 79 Or.App. 654, 658, 719 P.2d 1322 (1986) (expressly adopting the formulation in *McDonnell Douglas Corp. v. Green* and *Texas Dept. of Community Affairs v. Burdine* as the test for O.R.S. chapter 659 actions). Nevertheless, Oregon courts have rejected the burden-shifting mechanism applicable to federal discrimination claims. *Id.* at 658, 719 P.2d 1322. Moreover, the Ninth Circuit has held that once a plaintiff establishes a prima facie case of discrimination, summary judgment on an Oregon discrimination claim was inappropriate. *Messick v. Horizon Indus., Inc.*, 62 F.3d 1227, 1232 (9th Cir.1995).

### 1. Appropriate Parties

██ Defendant Kirshner moves for summary judgment on plaintiffs' claims under ORS. 659.030(1)(g) on the grounds that he cannot be held individually liable under O.R.S. 659.030. This court has held that "O.R.S. 659.030 does not provide for liability

against individual employees." *Mockler v. Skipper*, 1994 WL 675639, at *2 (D.Or.1994) (agreeing with the ruling of Judge Malcolm F. Marsh in *Sniadoski v. Unimart of Portland, Inc.*, 1993 WL 797438 (D.Or.1993) that "aiding and abetting liability makes little sense against an employee alleged to be an active participant in the asserted harm.").

The Oregon Court of Appeals has also held that O.R.S. 659.030 does not make an individual supervisor liable. *Ballinger v. Klamath Pacific Corp.*, 135 Or.App. 438, 898 P.2d 232, rev, den. 322 Or. 360, 907 P.2d 247 (1995). However, in another case, the state court distinguished a plaintiff's claim under O.R.S. 659.030(1)(g) from the general individual liability under O.R.S. 659.030. *Schram v. Albertson's, Inc.*, 146 Or.App. 415, 422, 934 P.2d 483 (1997). "[T]he plain text of [O.R.S. 659.030(1)(g) ] clearly encompasses both employees and employers and reaches those employees who aid and abet unlawful employment practices." *Id.*

Clearly, the federal courts and the Oregon state courts contradict each other on the issue of individual liability under O.R.S. 659.030(1)(g). However, I need not choose between these two interpretations. Even if Kirshner could be found individually liable, Oregon's laws provide no remedy and, therefore, this issue becomes moot.

"O.R.S. 659.121(1) restricts the remedies available for violations of O.R.S. 659.030 to injunctive relief and 'such other equitable relief as may be appropriate, including ... reinstatement or the hiring of employees with or without back pay." *Price v. Taco Bell Corp.*, 896 F.Supp. 1022, 1024 (D.Or. 1995). "[T]he equitable remedies of reinstatement and back pay are available only against the employer." *Id.*

Plaintiffs are not seeking injunctive or equitable relief against defendant Kirshner, nor could they logically seek such relief in this situation. O.R.S. 659.121(1) does not allow for compensatory and punitive damages to be awarded for claims under O.R.S. 659.030.[13] As such, plaintiffs have no viable remedy

---

13. Assuming O.R.S. 659.030(1)(g) allowed individual liability against supervisors and co-employees, O.R.S. 659.121(1) still does not create any compensatory or punitive damage remedies.

This appears to be created by an unfortunate gap in the state legislation. As such, this not an issue for a federal court to decide, but an issue for Oregon's legislature to remedy.

against defendant Kirshner and, therefore, he cannot be found individually liable under O.R.S. 659.030(1)(g). Consequently, defendant Kirshner is entitled to summary judgment on this issue.

### 2. Statute of Limitations

 Defendant Benson Hotel moves for summary judgment on plaintiffs' claims under O.R.S. 659.030(1)(g) on the grounds that the statute of limitations bars plaintiffs' claims. "Where no complaint has been filed [with BOLI] ... the civil suit or action shall be commenced within one year of the occurrence of the alleged unlawful employment practice." O.R.S. 659.121(3). If a "time period is a statute of limitation, noncompliance may be excused by the 'equitable tolling' doctrine, [but,] if ... the time period is a jurisdictional prerequisite, this equitable doctrine does not apply and noncompliance will divest the court of jurisdiction to hear the case." *Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322, 1324 (9th Cir.1987) (citations omitted).

In *Salgado*, the Ninth Circuit allowed the administrative processing of plaintiff's EEOC complaint to toll a one-year filing time period requirement of a state law claim under the California Fair Employment and Housing Act (FEHA). *Id.* at 1325. The court reasoned that even though "there is no direct authority construing this particular state statute's one-year time period ... there is a trend toward finding time limits placed on filing court actions or other similar filing periods to be statutes of limitations rather than jurisdictional prerequisites."[14] *Id.* at 1324. Furthermore, the court reasoned that the "procedures and remedies of Title VII and ... [FEHA] are wholly integrated and related." *Id.*

Oregon's Chapter 659 discrimination law is also "wholly integrated and related" to Title VII. *See Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 658, 719 P.2d 1322 (1986) (expressly adopting the formulation in *McDonnell*

*Douglas Corp. v. Green* and *Texas Dept. of Community Affairs v. Burdine* as the test for O.R.S. chapter 659 actions). Therefore, the statute of limitations under O.R.S. 659.121(3) also should be subject to the doctrine of equitable tolling. As such, a complaint timely filed with the EEOC under Title VII may equitably toll an Oregon state law claim under O.R.S. 659.030(1)(g).

Logan and Matthews filed their EEOC complaints in a timely manner, and I have already included Favreau in these timely filings pursuant to the "single filing" rule exception. As such, the O.R.S. 659.121(3) statute of limitations is equitably tolled and plaintiffs' O.R.S. 659.121(3) claims are not barred. Consequently, the Benson Hotel is not entitled to summary judgment on this issue.

### 3. Prima Facie Case and Issues of Fact

 Defendant Benson Hotel moves for summary judgment on plaintiffs' O.R.S. 659.030(1)(g) claims on the grounds that plaintiffs have not established a prima facie case. However, this court has already decided that plaintiffs have established a prima facie case under Title VII. Moreover, Oregon courts have rejected the burden-shifting mechanism applicable to federal discrimination claims. *See Henderson v. Jantzen, Inc.*, 79 Or.App. 654, 658, 719 P.2d 1322 (1986), *rev. denied*, 302 Or. 35, 726 P.2d 934 (1986). Therefore, there are genuine issues of material fact and the Benson Hotel is not entitled to summary judgment on this issue.

### B. Logan's and Matthews' State Law Tort Claims

### 1. Statute of Limitations

 Defendants move for summary judgment on the grounds that the statute of limitations bars plaintiffs Logan's and Matthews' state law tort claims. Nothing in Title VII "waives, extends or tolls common

---

14. "*See, e.g., Zipes,* 455 U.S. 385, 102 S.Ct. 1127 (filing timely charge with EEOC pursuant to 42 U.S.C. § 2000e–5(e)'s 180–day period is not jurisdictional prerequisite but a statute of limitations subject to equitable tolling); *Valenzuela,* 801 F.2d at 1174 (90–day filing period from issuance of right-to-sue letter by the EEOC in 42 U.S.C. § 2000e–5(f)(1) is statute of limitations subject to equitable tolling); *Gibbs v. Pierce County Law Enforcement Support,* 785 F.2d 1396 (9th Cir.1986) (follows *Zipes* in holding that 180–day filing requirement of § 2000e–5(e) is statute of limitations.)" *Salgado,* 823 F.2d at 1324.

law tort claims which arise out of a common nucleus of fact." *Sniadoski v. Unimart of Portland, Inc.,* 1993 WL 797438, at *3 (D.Or. 1993). Therefore, the appropriate state law statute of limitations governs Logan's and Matthews' state law tort claims.

Oregon's state law that governs tort claims states that:

> An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, ... shall be commenced with two years.

O.R.S. 12.110(1). Therefore, plaintiffs must have filed within two years of when the alleged tortious conduct occurred.

■ Logan and Matthews filed their state law claims in this case on July 10, 1996. Logan's last day at Trader Vic's was June 15, 1994. Matthews' last day at Trader Vic's was July 9, 1994. Therefore, their filing date in this case was past the two-year time period set forth in O.R.S. 12.110(1). As such, defendants are entitled to summary judgment on Logan's and Matthews' tort claims for: 1) negligent hiring and/or retention, 2) negligent supervision, 3) intentional interference with a business relationship/prospective advantage, 4) intentional infliction of emotional distress, 5) reckless infliction of emotional distress,[15] 6) negligence and gross negligence, and 7) assault and battery.

### C. Plaintiffs' Slander and Invasion of Privacy Claims

#### 1. Statute of Limitations

##### (a) Slander

##### (1) Statute of Limitations

Defendant [16] Benson Hotel moves for summary judgment on plaintiffs' claims for slander on the grounds that the statute of limitations bars these claims. "An action for libel or slander shall be commenced within one year." O.R.S. 12.120(2). Plaintiffs filed their claims in this case on July 10, 1996. Logan's and Matthews' last day of work at Trader Vic's was June 15, 1994 and July 9, 1994, respectively. Trader Vic's shut down on

April 19, 1996 and, consequently, Favreau was no longer employed at Trader Vic's after that date. Therefore, plaintiffs Logan's and Matthews' claims do not meet the one-year statute of limitations requirement, but Favreau's claim does meet the requirement. As such, defendant Benson Hotel is entitled to summary judgment on Logan's and Matthews' claims, but not on plaintiff Favreau's claim.

#### (2) Issues of Fact—Favreau

■ "An essential element of a claim for slander or defamation is 'publication of a statement to a third person.'" *Dutson v. Farmers Ins. Exchange,* 815 F.Supp. 349, 353 (D.Or.1993), *aff'd,* 35 F.3d 570 (9th Cir. 1994) (citing *State ex rel. Advanced Dictating Supply. Inc. v. Dale,* 269 Or. 242, 247, 524 P.2d 1404 (1974)). "No publication to a third person occurs where the allegedly defamatory statements are made to plaintiff's officers or employers." *Id.*

Favreau offers no evidence to prove this claim. Therefore, defendant Benson Hotel is entitled to summary judgment on this issue.

#### (b) Matthews' and Favreau's Claims for Invasion of Privacy

■ "[T]he law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff to be let alone.'" *Humphers v. First Interstate Bank of Oregon,* 298 Or. 706, 714, 696 P.2d 527 (1985) (quoting Prosser and Keeton, Torts 851, § 117 (5th ed.1984)). "[T]he four kinds of claims ... under the 'privacy' tort are [1] appropriation of the plaintiff's name or likeness, [2] unreasonable and offensive intrusion upon the seclusion of another, [3] public disclosure of private facts, and [4] publicity which places the plaintiff in a false light in the public eye." *Id.*

---

15. "There is no cognizable claim for the reckless infliction of emotional distress under the laws of the State of Oregon." *Snead v. Metro. Property & Casualty Ins. Co.,* 909 F.Supp. 775, 779 (D.Or. 1996) (*See McGanty v. Staudenraus,* 321 Or. 532, 547–50, 901 P.2d 841 (1995)).

16. There was some confusion as to whether defendant Kirshner was included in the slander claim. However, plaintiffs' counsel stated at oral argument that Kirshner was not included in the slander claim, but was included in the invasion of privacy claims.

To prevail on a tort claim of invasion of privacy, plaintiffs must show: (1) an intentional intrusion, physical or otherwise, (2) upon plaintiffs' private affairs or concerns, and (3) that the intrusion would be offensive to a reasonable person. *Cahill v. ITT Educational Services, Inc.*, 1988 WL 125711, at *1 (D.Or.1988) (citations omitted).

Plaintiffs Favreau and Matthews allege invasion of privacy claims against both defendants due to publicity that placed them in a false light in the public eye. In addition, plaintiff Favreau alleges an invasion of privacy claim due to public disclosure of private facts against both defendants.

### (1) *Invasion of Privacy—Matthews and Favreau*

#### (A) *Statute of Limitations*

Defendants move for summary judgment on the grounds that the statute of limitations bars plaintiffs' claims. "[W]hen a claim characterized as false light alleges facts that also constitute a claim for defamation, the claim must be filed within the period for bringing a defamation claim." *Magenis v. Fisher Broadcasting, Inc.*, 103 Or.App. 555, 560, 798 P.2d 1106 (1990). A false light claim of this nature is governed by the one-year statute of limitations required by O.R.S. 12.120(2). *Id.*

Plaintiffs allege that defendants leaked statements from both of them and facts about their cases to colleagues and coworkers at the Benson Hotel. Furthermore, they allege that these leaks portrayed both women as immature, unsophisticated and unskilled. Clearly, these allegations "allege facts that also constitute a claim for defamation." Therefore, plaintiff Matthews claim is barred by the statute of limitation and defendants are entitled to summary judgment. However, Favreau falls within the one-year time period.

### (2) *False Light Publicity and Disclosure of Private Facts*

#### (A) *Prima Facie Case*

Defendants move for summary judgment on grounds that Favreau did not state a valid factual case for her false light publicity and disclosure of private facts claims. "In a claim for invasion of privacy by publication of facts, the facts disclosed must be private, not public." *Ault v. Hustler Magazine, Inc.*, 860 F.2d 877, 882 (9th Cir. 1988) (citations omitted). "In Oregon there is not common-law tort liability for truthful presentation of private facts unless the defendant's conduct in obtaining or publishing the information is wrongful in some other respect." *Id.* (citations omitted).

"Both disclosure privacy and false light privacy causes of action require a 'public disclosure.'" *Blackthorne v. Posner*, 883 F.Supp. 1443, 1456 (D.Or.1995) (citations omitted). "To constitute such a disclosure it must be public in the sense of communication either to the public generally or to a large number of persons as distinguished from one individual or a few." *Id.*

Favreau alleges that defendants allowed unauthorized personnel to review correspondence regarding her previous employment, specifically her resume. In addition, she alleges that defendants made disclosures of allegations that were made about her work at Trader Vic's, specifically regarding her sexual harassment allegation against Kirshner.

However, Favreau fails to show that the misrepresentation or private facts were published to the public or to a large number of persons. Therefore, she cannot assert claims for false light and disclosure of private facts. Consequently, defendants are entitled to summary judgment on these issues.

### D. *Favreau's Remaining State Law Tort Claims*

"A plaintiff who brings a discrimination claims may also proceed in common law tort if the common law tort alleged requires the proof of facts beyond those necessary to make out [an Oregon state law] discrimination claim." *Malone v. Safeway Stores*, 698 F.Supp. 207, 208 (D.Or.1987).

#### 1. *Statute of Limitations*

Defendants move for summary judgment against Favreau's remaining state law tort claims on the grounds that the statute of limitations bars these claims. Favreau's last day of work at Trader Vic's was April 19, 1996. Her claims in this case were filed on July 10, 1996. Therefore, because O.R.S.

12.110(1) provides a two-year statute of limitations, Favreau's remaining state law tort claims are not barred. As such, defendants are not entitled to summary judgment on statute of limitations grounds.

### 2. Reckless Infliction of Emotional Distress

Defendants move for summary judgment on Favreau's claim for reckless infliction of emotional distress on the ground that the claim does not exist. "There is no cognizable claim for the reckless infliction of emotional distress under the laws of the State of Oregon." *Snead v. Metro. Property & Casualty Ins. Co.*, 909 F.Supp. 775, 779 (D.Or.1996); *see also McGanty v. Staudenraus*, 321 Or. 532, 547–50, 901 P.2d 841 (1995). Therefore, Favreau cannot legally have a claim for reckless infliction of emotional distress. As such, defendants are entitled to summary judgment on this issue.

### 3. Intentional Infliction of Emotional Distress

■ Defendants move for summary judgment on the grounds that Favreau has not presented any factual support for her claim for intentional infliction of emotional distress. "Under Oregon law, a claim for intentional infliction of emotional distress only lies where the defendant intended to inflict severe emotional distress on the plaintiff, the defendant's acts were the cause of severe Emotional distress, and the defendant's acts were an "extraordinary transgression of the bounds of socially tolerable conduct." *Dallal v. Burger King Corp.*, 1995 WL 747438, *2 (D.Or.1995) (citing *Madani v. Kendall Ford, Inc.*, 312 Or. 198, 203, 818 P.2d 930 (1991)). "It is the defendants' acts, rather than their motives, that must be outrageous." *Id.* (citing *Madani*, 312 Or. at 204, 818 P.2d 930). "The conduct must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at *3 (citations omitted) "The employer-employee relationship is a relevant factor in determining whether conduct is outrageous." *Id.* (citing *Hall v. May Dept. Stores Co.*, 292 Or. 131, 137, 637 P.2d 126 (1981)).

#### (a) Defendant The Benson Hotel

■ Defendant Benson Hotel moves for summary judgment on the grounds that Favreau does present any factual support for her claim for intentional infliction of emotional distress. Agreeing with the defendant, I find that Favreau does not present any evidence that the Benson Hotel acted in any manner or with any intent "to inflict severe emotional distress." Therefore, she has not stated a prima facie case for intentional infliction of emotional distress against the Benson Hotel and it is entitled to summary judgment on this issue.

#### (b) Defendant Kirshner

■ Defendant Kirshner moves for summary judgment of Favreau's claim for intentional infliction of emotional distress. Favreau does not present any evidence that Kirshner's alleged sexual harassment caused any "severe emotional distress." She only declares that his conduct was "uninvited and unwanted," "offensive" and made her feel "uncomfortable" at work. This is hardly proof of "extreme emotional distress." Therefore, Favreau has not stated a prima facie case for intentional infliction of emotional distress against Kirshner. As such, Kirshner is entitled to summary judgment on this issue.

### 4. Intentional Interference with a Business Relationship/Prospective Advantage

■ Defendants move for summary judgment on Favreau's claims for intentional interference with a business relationship/prospective advantage on the grounds that she has not presented any factual support.

[A] claim for tortious interference with a potential business relationship requires (plaintiff) to demonstrate: (1) the existence of a valid business relationship or expectancy, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to economic relations, and (6) damages.

*Kalgaard v. Lindo Mar Adventure Club*, 147 Or.App. 61, 66, 934 P.2d 637 (1997) (citing

*Uptown Heights Associates v. Seafirst Corp.,* 320 Or. 638, 651, 891 P.2d 639 (1995)).

Favreau does not present any evidence to support a prima facie case of intentional infliction of interference with a business relationship/prospective advantage. As such, defendants are entitled to summary judgment on this issue.

### 5. *Negligent Hiring and/or Retention*

■ Oregon law defines the tort of negligence hiring and/or retentions as follows:

Liability is for negligently placing an employee with known dangerous propensities, or dangerous propensities which could have been discovered by a reasonable Investigation, in a position where it is foreseeable that he could injure the plaintiff in the course of the work. The duty to use reasonable care in hiring or retaining [an] employee arises because it is foreseeable that the employee, in carrying out his; employment, may pose an unreasonable risk of injury to others.

*Chesterman v. Barmon,* 82 Or.App. 1, 4, 727 P.2d 130 (1986), *aff'd,* 305 Or. 439, 753 P.2d 404 (1988); *see also Cain v. Rijken,* 300 Or. 706, 714–15, 717 P.2d 140 (1986).

#### (a) *Negligent Hiring*

■ Defendant Benson Hotel moves for summary judgment on Favreau's claim for negligent hiring. Favreau presents no evidence to prove that the Benson Hotel was negligent in its hiring of Kirshner. In contrast, Parsons has testified that before he hired Kirshner, he checked with Kirshner's previous employer and did not receive any information that would have made Kirshner's alleged conduct foreseeable. Therefore, the Benson Hotel is entitled to summary judgment on this issue.

#### (b) *Negligent Retention*

■ Defendant Benson Hotel moves for summary judgment on Favreau's claim for negligent retention on the grounds that Favreau has not presented any factual support. Favreau declares that Kirshner subjected her to "repeated" unwanted physical contact and "repeated requests, comments and stares" that she construed "to be sexual in nature." She alleges that the Benson Hotel knew or should have known of Kirshner's behavior.

The issue of whether the Benson Hotel "knew or should have known" of Kirshner's alleged sexual harassment is a genuine issue of material fact, as previously discussed. Furthermore, whether the Benson Hotel was negligent in retaining Kirshner for eight days after Favreau reported his behavior to the Benson Hotel is also a genuine issue of material fact. Therefore, summary judgment would not be proper on this issue.

### 6. *Negligent Supervision*

■ Defendant Benson Hotel moves for summary judgment on Favreau's claim for negligent supervision on the grounds that Favreau has not presented a factual basis for her claim. "Where a special relationship exists between the defendant and the plaintiff, there is a duty to protect the plaintiff from injury by third parties." *Hoke v. May Dept. Stores Co.,* 133 Or.App. 410, 414–15, 891 P.2d 686 (1995) (relying on *Buchler v. Oregon Corrections Div.,* 316 Or. 499, 505, 853 P.2d 798 (1993)). "Defendant's duty to exercise reasonable care [is] to protect plaintiff from third persons, not from defendant's own agents or employees." *Id.* at 415, 891 P.2d 686.

Kirshner managed Trader Vic's and, consequently, was an "agent or employee" of the Benson Hotel. Therefore, the Benson Hotel did not owe a duty to Favreau to exercise reasonable care to protect her from Kirshner under the legal requirements of the tort of negligent supervision. Consequently, the Benson Hotel is entitled to summary judgment on this issue.

### 7. *Negligence and Gross Negligence*

■ "Gross negligence and ordinary negligence are different claims for relief." *DeYoung v. Fallon,* 104 Or.App. 66, 69, 798 P.2d 1114 (1990) (citing *Fassett v. Santiam Loggers. Inc.,* 267 Or. 505, 508, 517 P.2d 1059 (1973), *rev. denied,* 311 Or. 222, 810 P.2d 854 (1991)). Under Oregon law, "generally, '[t]o state a cause of action in negligence, [a] plaintiff must allege that [the] defendant owed ... a duty, that [the] defendant breached that duty, and that the breach was the cause in face of some legally cognizable dam-

age to [the] plaintiff.'" *Chesterman,* 82 Or. App. at 4, 727 P.2d 130 (citing *Brennen v. City of Eugene,* 285 Or. 401, 405, 591 P.2d 719 (1979)). Whereas, the elements of gross negligence are:

> (1) negligence accompanied by the actor's conscious indifference to the rights of others, or (2) negligence which is increased in magnitude by the actor's reckless disregard of the rights of others. [The court] find[s] not simply an inadvertent breach of duty or impudent conduct (as is ordinary negligence), but [that] the violation of the duty to others is so flagrant as to evidence an indifference to or reckless disregard of the rights of others.

*State of Oregon v. Hodgdon,* 244 Or. 219, 223, 416 P.2d 647 (1966). Furthermore, "in order to support such a claim, the negligent acts taken together must show a reckless state of mind on the part of defendant." *Smith v. Barry,* 37 Or.App. 319, 321, 587 P.2d 483 (1978) (citations omitted).

### (a) *Defendant The Benson Hotel*

▮ Defendant Benson Hotel moves for summary judgment on Favreau's claims for negligence and gross negligence on the ground that her claims are redundant. The "duty" that the Benson Hotel owed Favreau is the same in Favreau's claim for negligent supervision. Favreau's negligence claim is redundant, because Favreau alleges no facts other than issues of supervision and management to support a general negligence claim. Furthermore, concerning the gross negligence claim, any of the alleged negligent acts by the Benson Hotel do not amount to a showing of a "reckless state of mind." As such, the Benson Hotel is entitled to summary judgment on these issues.

### (b) *Defendant Kirshner*

▮ Defendant Kirshner moves for summary judgment on Favreau's claims for negligence and gross negligence on the ground that her claims are redundant. Essentially, Favreau is trying to distinguish "negligent harassment" from her Title VII and Oregon discrimination claims. These laws make no such distinction: Title VII and Oregon law encompass both intentional or negligent harassment is covered by Title VII and Oregon law. Kirshner, as previously discussed,

can not be held individually liable under either Title VII or Oregon's discrimination laws. The parties have not cited and the court is not aware of any Oregon case in which a supervisor has been found liable for gross negligence in this context. Furthermore, Favreau's allegations appear to focus on Kirshner's intentional acts of sexual harassment and, thereby, are already addressed by her intentional tort claims. Thus, Kirshner is entitled to summary judgment on these issues.

### 8. *Assault and Battery*

▮ Defendant Kirshner moves for summary judgment on the grounds that Favreau's claim for assault and battery does not establish that he had the necessary intent to commit assault and battery. Intent for assault is characterized as follows:

> [A]n assault is an intentional attempt to do violence to the person of another coupled with present ability to carry the intention into effect. * * * From a consideration of the authorities we conclude that an intentional act causing unpermitted physical contact with the person of another does not necessarily amount to an assault and battery. We must distinguish between an intent to do an act which may be willful or wanton and which may result in contact, on the one hand, and an act involving an intent to cause harmful or offensive contact with the person, on the other. An assault and battery involves more than an intentional act. There must be the intent to injure.

*Cook v. Kinzua Pine Mills Co.,* 207 Or. 34, 48, 293 P.2d 717 (1956).

In addition, "to constitute liability for a battery, the conduct which brings about the harm must be an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact or put the other party in apprehension thereof." *Bakker v. Baz'ar,* 275 Or. 245, 249, 551 P.2d 1269 (1976).

There are genuine issues of fact concerning Kirshner's alleged conduct, as previously discussed. Consequently, whether he intended these acts is also a question of fact that needs to be determined. Therefore, Kirsh-

ner is not entitled to summary judgment of this issue.

### E. *Pendant Jurisdiction— Defendant Kirshner*

The Supreme Court has indicated that the rule that "if federal claims are dismissed before trial ... the state claims should be dismissed as well" is not "a mandatory rule to be applied inflexibly in all cases." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) (citations,omitted). See *also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Rather, "the doctrine of pendent jurisdiction ... is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensible accommodates a range of concerns and values." *Id.*

Consequently, "the district court is in the best position to judge the extent of resources invested in a case." *Schneider v. TRW, Inc.,* 938 F.2d 986, 993–94 (9th Cir.1991). "The Supreme Court has stated that the 'common-sense policy of pendent jurisdiction' is 'the conservation of judicial energy and the avoidance of multiplicity of litigation.'" *Id.* at 994 (citations omitted).

Therefore, in the interest of judicial economy and common-sense, I am exercising pendent jurisdiction over the remaining state law claims concerning defendant Kirshner.[17]

### III. *MOTION STRIKE*

Defendant Benson Hotel's motion to strike (# 86) portions of plaintiffs' statement of facts is denied. This opinion does not predominantly rely on any of the contested portions. Furthermore, I leave room for defendant Benson Hotel to make, where appropriate, future evidentiary objections during the pre-trial procedure and the trial.

Defendants' motions for summary judgment are GRANTED in part and DENIED in part. Plaintiffs' counter-motion is DE-

NIED. Defendant Benson Hotel's motion to strike is DENIED.

17. Defendant Kirshner has made no formal motion to dismiss for lack of federal subject matter jurisdiction. However, his response to this motion for summary judgment, filed on July 30, 1997, argued this point.